RESF

FILED

JUN 20 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re )     Case No. 11-19212-B-11
)
Merced Falls Ranch, LLC, )     DC No. CN-2
)
         Debtor. )

**MEMORANDUM DECISION REGARDING SUPPLEMENTAL
APPLICATION FOR PAYMENT OF ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES**

Jasper L. Ozbirn, Esq., of Cappello & Noël LLP, appeared on behalf of the applicant, Cappello & Noël LLP.

Jake A. Soberal, Esq., of Walter & Wilhelm Law Group, appeared on behalf of the debtor, Merced Falls Ranch, LLC.

       Before the court is an application filed by the law firm of Cappello & Noël LLP ("Cappello") for payment of legal fees and reimbursement of expenses under 11 U.S.C. § 328[1] (the "Supplemental Application"). Cappello seeks compensation for services it performed in the prior prosecution of a contested fee application and for its opposition to the Debtor's motion for entry of a final decree. The debtor, Merced Falls Ranch, LLC (the "Debtor") opposes the Supplemental Application on the grounds that the requested fees are unreasonable. Because Cappello didn't exercise prudent billing judgment in the performance of its legal services, and for the reasons set forth below, the Supplemental

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (enacted Apr. 20, 2005).

1  Application will only be allowed in part.

2       This memorandum decision contains the court's findings of fact and conclusions

3  of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

4  contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).  The court

5  has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 328, and

6  General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of

7  California.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

8  **BACKGROUND AND FINDINGS OF FACT.**

9       The background of this dispute is recited in the court's earlier Memorandum

10  Decision Regarding [Cappello's] Application for Payment of Contingency Fee, filed

11  October 16, 2012 (ECF No. 245), and will not be fully revisited here.  However, for

12  purposes of this memorandum, the relevant facts may be summarized as follows:

13       The Debtor filed a voluntary petition under chapter 11 in August 2011, in order to

14  stay a non-judicial foreclosure sale by its secured creditor American AgCredit, ACA[2]

15  ("AAC").  Prior to the bankruptcy, the Debtor retained Cappello to prosecute an action in

16  the state court for, *inter alia*, damages against AAC based on claims of lender liability

17  (the "State Court Action").  The Debtor initially engaged Cappello pursuant to the terms

18  of a fee agreement (the "Fee Agreement" or "Agreement").  The Fee Agreement

19  provided for a hybrid fee arrangement whereby Cappello was entitled to recover both

20  hourly fees for services rendered (outlined in sections 3.1 and 3.2 of the Fee Agreement)

21  and a contingency fee dependent upon future events (outlined in section 3.4 of the Fee

22  Agreement).  Soon after commencement of the bankruptcy case, the Debtor filed an

23  application seeking to employ Cappello as its "special counsel" to continue prosecuting

24  the State Court Action.  Cappello's employment was approved according to the terms of

25  the prepetition Fee Agreement.

26       Before conclusion of the State Court Action, in June 2012, the Debtor and AAC

27  _____

28     [2] The acronym "ACA" stands for Agricultural Credit Association.

1  confirmed a "joint" chapter 11 plan of reorganization, which effectively resolved their

2  dispute.  Following confirmation of the plan, Cappello filed an application requesting

3  payment of a contingency fee pursuant to the terms of the Fee Agreement (the

4  "Contingency Application").  The Debtor disputed Cappello's interpretation of the Fee

5  Agreement and opposed the Contingency Application.[3]

6        After oral argument and the submission of supplemental briefs, this court granted

7  the Contingency Application and awarded Cappello its entire contingency fee, in the

8  amount of $554,650.  Cappello prepared and submitted the proposed order, which was

9  signed on November 9, 2012.  The order expressly authorized Cappello to "submit a

10  further application for payment of the fees and expenses it has incurred in applying for

11  and obtaining this Order."

12        Five days after the court awarded Cappello's contingency fee, on November 14,

13  2012, the Debtor filed a motion for entry of a final decree and for an order closing the

14  case (the "Final Decree Motion").  The court continued the Final Decree Motion

15  because, *inter alia*, it had not been served on Cappello and was not supported by

16  evidence to show that the recently awarded contingency fee had been paid.  The court

17  ordered that Cappello be served with notice of the Final Decree Motion and the matter

18  was then set for a further hearing on January 31, 2013.  After being properly served,

19  Cappello filed an opposition to the Final Decree Motion on the grounds that (1) the

20  contingency fee had not yet been paid and (2) Cappello needed more time to file and

21  litigate the current Supplemental Application.  For reasons not directly related to this

22  dispute, the court has not yet ruled on the Final Decree Motion.[4]

23        Cappello now requests payment of additional hourly fees pursuant to § 328 of the

24

25  [3] Cappello had previously filed a motion for payment of hourly fees and costs totaling $88,245.
   That motion was unopposed by the Debtor and was approved by the court.  Those fees have been paid.

26

27  [4] Based on the Debtor's status report dated June 13, 2013, and Cappello's supplemental
   opposition to entry of a final decree dated June 13, 2013, the Debtor has not yet sold or refinanced its
   real property as provided in the chapter 11 plan and the Debtor has not yet paid Cappello's contingency

28  fee.

Bankruptcy Code and the terms of the Fee Agreement.  In addition to the contingency

fee, the Fee Agreement entitles Cappello to recover its "reasonably related" hourly fees:

> 3.1 <u>Attorneys' Fees</u>.  Clients agree to pay Cappello & Noël for all time
> spent by Cappello & Noël reasonably related to the representation of Clients. . . .

In recognition of the fact that Cappello could be receiving both a contingency fee

and an hourly fee, the Fee Agreement provided for a 20% reduction in Cappello's hourly

billing rates:

> 3.2 <u>Application of Retainer and Hourly Rates</u>. . . .  Since Clients also may
> be responsible for a contingency fee pursuant to Section 3.4, Cappello & Noël
> will discount only its hourly fees by twenty percent (20%).[5]

In this Supplemental Application, Cappello requests payment of additional hourly

fees in the amount of $60,095 and reimbursement of additional expenses in the amount

of $156.15.[6]  The fees represent about 140 hours of time spent by Cappello's staff from

April 19, 2012 to January 18, 2013,[7] in preparing the prior Contingency Application,

litigating that Application, preparing the order granting the Contingency Application,

objecting to the Debtor's Final Decree Motion, and preparing the present Supplemental

Application.  Attached to the Supplemental Application are the detailed billing records

showing how much time Cappello spent on these tasks (the "Billing Records").

As with the prior Contingency Application, Cappello's Supplemental Application

is opposed by the Debtor.  Comparing Cappello's services to those billed by Debtor's

counsel for similar work in connection with the same activities, the Debtor contends that

the fees requested by Cappello are unreasonable and requests that the fees be reduced to

---

[5] Cappello's initial billing rates for attorneys ranged from a low of $395 per hour to a high (for A. Barry Cappello) of $850 per hour.  In March 2012, Cappello exercised its right under section 3.3 of the Fee Agreement to alter its existing fee schedule and sent a letter notifying the Debtor of increases in the firm's rates.  The new attorney rates ranged from $425 per hour to $950 per hour.

[6] The Debtor has not objected to the expenses requested by Cappello.

[7] The Supplemental Application showed approximately 155 hours of work performed, but Cappello voluntarily cut about 15 hours from its request.

1 | $11,343.75, a reduction of approximately 80%.

2 | **DISCUSSION AND CONCLUSIONS OF LAW.**

3 |     <u>Review of Professional Fees Under § 328.</u>  Cappello requests additional

4 | compensation pursuant to the terms of the previously approved Fee Agreement and § 328

5 | of the Bankruptcy Code, which somewhat limits the scope of the court's ability to review

6 | the fee request:

7 |        where the bankruptcy court has previously approved the terms for

8 |        compensation of a professional, [pursuant to § 328] when the professional ultimately applies for payment, the court cannot alter those terms unless it finds the original terms "to have been improvident in light of developments

9 |        not capable of being anticipated at the time of the fixing of such terms and conditions."

10 |

11 | *Pitrat v. Reimers (In re Reimers)*, 972 F.2d 1127, 1128 (9th Cir. 1992) (quoting

12 | § 328(a)); *see also In re Confections by Sandra, Inc.*, 83 B.R. 729, 731 (9th Cir. BAP

13 | 1987).  When no such unforeseen circumstances exist to warrant adjustment of fees,

14 | "§ 328(a) limits the authority of the bankruptcy court to depart from the terms of the fee

15 | agreement previously approved." *In re First Magnus Fin. Corp.*, No. AZ-08-1160-

16 | PaDMo, 2009 WL 7809001, at *8 (9th Cir. BAP Feb. 24, 2009).  Generally, once the

17 | court has already and unconditionally approved the professional's employment under

18 | § 328, "[t]here is no question that [it] may not conduct a § 330 inquiry into the

19 | reasonableness of the fees and their benefit to the estate." *Friedman Enters. v. B.U.M.*

20 | *Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000).  The inquiry then,

21 | whether Cappello is entitled to an additional $60,095 in hourly fees, begins with an

22 | analysis of the terms that have already been approved in the Fee Agreement.

23 |     <u>The Contractual 20% Reduction of the Hourly Fees.</u>  First, the court notes that

24 | nothing in the Supplemental Application suggests that Cappello applied the 20%

25 | reduction to its hourly billing rates as required by the Fee Agreement.[8]  Specifically, the

26 | _____

27 |     [8] At the hearing on February 28, 2013, the court asked the attorney appearing for Cappello whether the contractual 20% reduction had been applied to the fees requested.  The attorney responded

28 | that he was unsure whether that had occurred.

1   last sentence of section 3.2 of the Agreement provides, "Since Clients also may be

2   responsible for a contingency fee pursuant to section 3.4, Cappello & Noël will discount

3   only its hourly fees by twenty percent (20%)." Because this court has already awarded

4   Cappello its contingency fee pursuant to section 3.4 of the Agreement, it follows that the

5   Debtor is entitled to a 20% reduction of the hourly fees charged pursuant to section 3.2.[9]

6   By the plain language of section 3.2, the 20% reduction is a "discount" of the billing rate,

7   not a reduction of the hours that were billed.[10] In recognition of this provision in the Fee

8   Agreement, the court must first reduce the fees requested in the Supplemental

9   Application by 20%. Therefore, before the court gives further consideration to the

10   Application, the amount of its fee request will be reduced to $48,076.

11        After application of the contractual discount, the court will not further review the

12   billing rates charged by Cappello. The Debtor has not objected to the hourly rates and

13   Cappello's billing rates, and the right to adjust those billing rates, were agreed to in the

14   Fee Agreement. The constraints of § 328 limit review of the terms of Cappello's

15   employment, even if the applicable billing rates do not represent the prevailing market

16   rates in the relevant community.

17        <u>The Hours Billed and the Prudent Billing Judgment Test.</u> Even though the court

18   may be bound by governing principals to honor Cappello's discounted hourly rates, those

19

---

20       [9] The last sentence of section 3.2 was drafted in a less-than-artful way. Nevertheless, this

21   sentence is susceptible to only one reasonable interpretation and the court construes it to mean that (1) Cappello was obligated to reduce its hourly fees by 20% (based on the placement of the words "may" and

22   "will" in the sentence without any subsequent qualifications) and (2) the obligation was not expressly conditioned on the requirement that a contingency fee actually be awarded or paid. To the extent this

23   contractual language may be ambiguous, the court notes that the Fee Agreement must be strictly construed against the attorney who drafted it. *See In re Cnty. of Orange*, 241 B.R. 212, 221 (C.D. Cal.

24   1999) (citing *Alderman v. Hamilton*, 205 Cal. App. 3d 1033, 1037 (1988)). Thus, regardless of whether the last sentence of section 3.2 is ambiguous or not, and regardless whether the Debtor has of yet paid the

25   contingency fee, the 20% reduction in billing rates must apply.

26
       [10] The court acknowledges that Cappello did voluntarily reduce the number of hours it billed

27   from 155 to 140 hours in the Supplemental Application. However, this reduction amounted to only 10% of the hours reportably worked and does not appear to have been intended as a way of complying with

28   the last sentence of section 3.2.

principals do not also preclude judicial review of the hours reflected in the Supplemental

Application. By its terms, § 328 allows the court to review and adjust Cappello's fee

request based on "developments not capable of being anticipated" at the time of the

agreement. One assumption that the Debtor, and the court, were entitled to make when

entering into and approving the Fee Agreement, was that Cappello would exercise

prudent billing judgment for the time it billed to the Debtor.[11] If, as discussed below,

Cappello failed to exercise prudent billing judgment, that certainly would be a

"development not capable of being anticipated" when the court approved the Fee

Agreement.[12] Accordingly, the court is not bound by § 328 and the terms of the Fee

Agreement to compensate Cappello for all of the hours reflected in the Supplemental

Application.

Whenever the court must determine the reasonableness of the hours expended by

a fee applicant, a universal consideration in the court's analysis is whether the applicant

exercised reasonable or prudent billing judgment when it billed for those fees. *See*

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R.

103, 109 (9th Cir. BAP 2000) ("Professionals always must exercise proper billing

judgment."); *Lobel & Opera v. U.S. Tr. (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33

---

[11] While an attorney's exercise of reasonable billing judgment is typically an implicit understanding in an hourly fee arrangement between the attorney and the client, the Fee Agreement in this case may be interpreted as expressly including a "reasonableness" component. Section 3.1 of the Agreement, provided, in part, that "Clients agree to pay Cappello & Noël for all time spent by Cappello & Noël *reasonably* related to the representation of Clients."

[12] Even if Cappello's lack of prudent billing judgment does not constitute a "development[ ] not capable of being anticipated," the court would still engage in a "reasonableness" analysis. Since nothing in the Fee Agreement fixed or established the number of hours Cappello was allowed to bill the Debtor, the court is not departing from any provision of the Agreement by considering whether the hours actually billed were reasonable. *See Confections by Sandra*, 83 B.R. at 733 (remanding to bankruptcy court for determination as to whether hours expended by attorney, who was employed under § 328, were reasonable under the circumstances); *see also Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991) (noting in dicta that where "bankruptcy court [has] approved an hourly rate, [but has] not fix[ed] the number of allowed hours, that matter still would be subject to the court's review").

1   (9th Cir. BAP 1997) ("Professionals have an obligation to exercise billing judgment.");

2   *see also Puget Sound Plywood*, 924 F.2d at 958–59 (noting that a bankruptcy

3   professional had an "obligation to exercise billing judgment" and did not have "free

4   reign to run up a tab" without considering several factors).  On this "billing judgment"

5   issue, the Supreme Court has commented,

6           [A court] . . . should exclude from [the] initial fee calculation hours that
            were not "reasonably expended."  Cases may be overstaffed, and the skill
7           and experience of lawyers vary widely.  Counsel [who is requesting fees]
            should make a good faith effort to exclude from a fee request hours that are
8           excessive, redundant, or otherwise unnecessary, just as a lawyer in private
            practice ethically is obligated to exclude such hours from his fee
9           submission.  In the private sector, "billing judgment" is an important
            component in fee setting.  It is no less important here.
10

11   *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citations omitted) (internal quotation

12   marks omitted) (Civil Rights Attorney's Fees Awards Act context).  Thus, "[i]t does not

13   [necessarily] follow that the amount of time *actually* expended is the amount of time

14   *reasonably* expended."  *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en

15   banc) (emphasis added).

16           "The [applicant] applying for fees bears the burden of proving the reasonableness

17   of those fees."  *Dalessio v. Pauchon (In re Dalessio)*, 74 B.R. 721, 724 (9th Cir. BAP

18   1987) (§ 506(b) context).  It is not sufficient for the applicant to simply represent that all

19   of the time claimed was usefully spent, and the court should not uncritically accept those

20   representations.  *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987).

21   Instead, the applicant must show that the time spent was reasonably necessary and that it

22   made a good faith effort to exclude excessive, redundant, or unnecessary hours.  *Id.*  And

23   unless the court is satisfied that the fee applicant exercised prudent billing judgment, the

24   court is not required to accept the actual hours expended as being reasonable.

25           Categories of Tasks Performed.  The tasks that make up the Supplemental

26   Application can be categorized into four time blocks: (1) preparing the Contingency

27   Application (from April 19 to July 18, 2012); (2) defending against the Debtor's

28   objection to the Contingency Application (from August 9 to September 21, 2012);

1   (3) preparing the order allowing the contingency fee (from October 19 to November 13,

2   2012); and (4) preparing the Supplemental Application and the objection to the Final

3   Decree Motion (from November 28, 2012 to January 18, 2013).  The threshold question

4   is whether these tasks are reasonably related to in the scope of Cappello's employment.

5   The court answers this question in the affirmative.

6          The concept of reasonableness when applied to a body of legal work invokes a

7   combination of objective and subjective inquiries.  Objectively, the court must be

8   persuaded that the legal work performed in a particular case was consistent with the kind

9   of legal service which a similarly situated creditor might require.  The court must also

10  determine that the value of the legal services is consistent with the cost of similar legal

11  services for similar work.  Subjectively, the court must inquire whether the professionals

12  exercised prudent billing judgment in the decisions that were made to engage the legal

13  services, the way the work was assigned, and the manner in which it was actually

14  performed.  As the Bankruptcy Appellate Panel has opined,

15          Reasonableness embodies a range of human conduct.  The key determinant
            is whether the [attorney applying for fees] incurred expenses and fees that
16          fall within the scope of the fees provision in the agreement, and took the
            kinds of actions that similarly situated [attorneys] might reasonably
17          conclude should be taken, or whether such actions and fees were so clearly
            outside the range as to be deemed unreasonable.
18

19  *Dalessio*, 74 B.R. at 723.

20         It is undisputed that an attorney employed by the estate is entitled to compensation

21  for preparing and presenting a fee application to the court.  *In re Nucorp Energy, Inc.*,

22  764 F.2d 655, 662 (9th Cir. 1985).  Similarly, compensation may be awarded for

23  successfully litigating the fee application (i.e., by defending against objections to the fee

24  application) may be awarded as well.  *See Smith v. Edwards & Hale, Ltd. (In re Smith)*,

25  317 F.3d 918, 928–29 (9th Cir. 2002) (requiring fee applicant to show that time and

26  expense spent litigating fee application was necessary), *abrogated on other grounds by*

27  *Lamie v. U.S. Tr.*, 540 U.S. 526 (2004); *Boldt v. Crake (In re Riverside-Linden Inv. Co.)*,

28  945 F.2d 320, 323 (9th Cir. 1991) (holding that bankruptcy court did not abuse discretion

9

1  in denying fees incurred by fee applicant in unsuccessfully opposing objection to fee

2  application).

3        Here, Cappello has a right to be compensated for reasonable services connected

4  with preparation of both the Contingency Application and this Supplemental Application.

5  Additionally, Cappello is entitled to compensation for its successful defense of the

6  Contingency Application and for preparation of the resulting order, both of which were

7  reasonably related to the Contingency Application.  Lastly, Cappello's work in objecting

8  to the Debtor's Final Decree Motion was reasonably related to defense of the

9  Contingency Application since the objection resulted from the Debtor's failure to pay the

10  contingency fee that had been awarded.  Thus, the court has no problem with the

11  categories of work reflected in the Supplemental Application.  The only remaining issue

12  relates to the amount of time Cappello expended to perform these tasks.

13        Application to the Fee Applicaton.  Upon review of the Billing Records, the court

14  is not persuaded that Cappello exercised prudent billing judgment as a general matter.

15  These records show several, varied instances where Cappello "overlawyered" on certain

16  tasks or otherwise billed for excessive, redundant, or unnecessary work.  Specifically, the

17  following issues support the court's conclusion:

18        *Time Spent Preparing the Contingency Application.*  Based on the Billing Records,

19  it appears that Cappello spent approximately 30 hours, between April 19, 2012, and July

20  18, 2012, at a billed cost of approximately $25,175, to prepare and file the Contingency

21  Application.  That amount of time is patently excessive and particularly troubling given

22  that Cappello only requested the award of a contingency fee.  The Contingency

23  Application did not require the production and analysis of time records, and the amount

24  of the proposed contingency fee was readily calculable.  Excluding the exhibits (copies

25  of other documents already filed in the case), the Contingency Application consisted of a

26  four-page motion, a seven-page declaration of attorney Thielemann, and a five-page

27  narrative summary.  There was nothing particularly remarkable or complicated about the

28  Contingency Application and much of the material was unnecessary.  For example, it

1   was not necessary to offer biographical summaries of Cappello's attorneys since its

2   employment had already been approved and it was only requesting payment of a

3   contingency fee fixed by contract under the Fee Agreement.

4         Cappello notes that much of the time spent preparing the Contingency Application

5   was actually work performed in anticipation of the Debtor's forthcoming objection.

6   However, Cappello billed an additional $10,585 for work performed after the objection

7   was filed, between August 9, 2012, and September 21, 2012, when the court finally took

8   the matter under submission after the filing of supplemental briefs.  This time appears,

9   from a review of the pleadings filed, to be unreasonably excessive.  The only legal

10  standard cited by Cappello in support of its contingency fee was the basic standard for

11  the application of § 328.  There was no analysis relating to the contract interpretation

12  issue, which was the ultimate issue in the dispute.  Indeed, most of the court's decision

13  awarding Cappello's contingency fee was based on the court's own independent

14  research.  It appears that Cappello either spent very little time researching the relevant

15  legal issues or simply researched the wrong ones.  Whichever may be the case, the time

16  spent preparing and defending the Contingency Application was unreasonable.

17        *Time Spent Preparing An Order Allowing the Contingency Fee.*  Similarly, the

18  amount of time spent preparing the order allowing Cappello's contingency fee showed a

19  lack of prudent billing judgment.  When the court issued its memorandum decision

20  allowing the contingency fee, Cappello was directed to submit an appropriate order.

21  What Cappello had to do at that point was fairly straightforward: just prepare and lodge

22  with the court an order approving the contingency fee.  Yet, Cappello somehow spent 14

23  hours between October 19 and November 13, 2012, at a billed cost of $7,272.50

24  completing this simple task.

25        According to its Billing Records, Cappello did a significant amount of unnecessary

26  work related to this task, such as performing additional legal research (after the court had

27  already decided the issues in its memorandum decision) and seeking the Debtor's

28  bankruptcy counsel's signature for the order (when the court did not require the Debtor's

11

1  approval). It is unclear why Cappello chose to do these things. Whatever the reasons,

2  the firm should not have billed for all of that work in its Supplemental Application.

3  Again, the Billing Records show that Cappello did not exercise prudent billing judgment.

4      *Double Billing for Internal Conferences.* Next, when members of the firm had

5  internal office or email conferences with one another, Cappello, for the most part,

6  appropriately included only one billing entry for each conference. However, there were

7  five instances of "double billing" and one instance of "triple billing," where two or more

8  attorneys each billed for the same conference. Cappello fails to explain why a "team" of

9  expensive attorneys was required to present and defend Cappello's interests at the end of

10  this case. These additional entries should not have been included in the Supplemental

11  Application.

12      *Hours Expended by Attorney Cappello.* The Supplemental Application included

13  1.5 hours billed by attorney A. Barry Cappello. Mr. Cappello is a well- respected,

14  highly-specialized and very expensive attorney who bills his time at $950 an

15  hour—nearly twice the rate of the next costliest attorney in the firm. It is unclear why his

16  participation in these matters was necessary, especially in light of the fact that the

17  attorney who was assigned to present the Contingency and Supplemental Applications,

18  Troy A. Thielemann, is promoted as the head of "the firm's appellate research and

19  writing department, where he is responsible for overseeing the preparation of substantial

20  written materials including complaints, summary judgment mentions, trial motions, and

21  appellate briefs." If Mr. Cappello felt compelled to oversee and supervise Mr.

22  Thielemann's work product, then Mr. Cappello's time should have been logged as an

23  internal administrative expense and not billed to the Debtor.

24      *Unrelated Services.* Lastly, Cappello improperly included in its Billing Records

25  the time spent researching and contacting bankruptcy attorneys in the Fresno area to

26  represent Cappello in the Debtor's bankruptcy case. Again, it's not clear why Cappello

27  felt it needed to retain the services of a local bankuptcy attorney, but this appears to be a

28  task that should have been treated as an internal overhead expense; it should not have

1  been billed to the Debtor.

2       Determination of the Allowed Amount of Fees. Once the court finds that a fee

3  applicant has not exercised prudent billing judgment, the court has the discretion to

4  determine the reasonable amount of fees to be allowed. In light of Cappello's lack of

5  prudent judgment as discussed above and evidenced throughout the Billing Records, the

6  court is persuaded that a downward adjustment to the already-discounted fee is

7  appropriate. In reducing the fees, the court must "provide a concise but clear explanation

8  of its reason for the fee award," *Hensley*, 461 U.S. at 437, and must also "articulate with

9  sufficient clarity the manner in which it makes its determination." *Chalmers v. City of*

10 *Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir.

11 1987). However, this does not require the court to include detailed calculations in its

12 explanations, but "something more than a bald, unsupported amount is necessary." *Id.* at

13 1211 n.3.

14       Given the variety and pervasiveness of the issues relating to how Cappello

15 performed its work, and the difficulty in scrutinizing and recalculating each individual

16 entry in the Billing Records, the court finds it appropriate to reduce the discounted fee

17 request by half. *Cf. Leichty v. Neary (In re Strand)*, 375 F.3d 854, 861 (9th Cir. 2004)

18 (finding no abuse of discretion when bankruptcy court reduced by half the attorney's fees

19 requested in fee application). Therefore, Cappello will be entitled to fees in the amount

20 of $24,038.[13]

21 **CONCLUSION.**

22       Based on the foregoing, the court finds and concludes that Cappello is entitled to

23 reasonable compensation for the work it performed in preparing and litigating the

24 Contingency Application and protecting its interest. However, Cappello was at all times

25

26  [13] To fall in line with the requirements of § 328, the court clarifies that no adjustment is being
    made to the hourly rates charged by Cappello. Instead, to reach the $24,038 figure, the court is reducing
27  the amount of time for each billing entry by half. *See Chalmers*, 796 F.2d at 1211 n.3 ("While the [court]
    need not set forth in exhaustive detail the method of calculating an attorney's fee award, at the very least
28  [it] must set forth the number of hours compensated and the hourly rate applied.").

required to exercise prudent billing judgment, and its right to be compensated for the time spent in the case was qualified by the "reasonableness" standard applicable generally to the award of attorney's fees in bankruptcy cases.  Pursuant to the terms of the Fee Agreement, Cappello's fees are subject to an immediate 20% reduction. Thereafter, and for the reasons stated above, the court is not persuaded that Cappello exercised prudent billing judgment for the 140 hours that it billed to the Debtor. Accordingly, Cappello's request for additional fees will be allowed in the amount of $24,038.  Its request for reimbursement of expenses will be allowed in full in the amount of $156.15.  No additional fees will be awarded for litigating the present dispute.

Dated: June ___20___, 2013

W. Richard Lee
United States Bankruptcy Judge

14

# Instructions to Clerk of Court
## Service List - Not Part of Order

\\

    The Clerk of Court is instructed to send the Order or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

    Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X___ Other Persons Specified Below:


Troy A. Thielemann, Esq.
Cappello & Noël LLP
831 State Street
Santa Barbara, CA 93101

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721